UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EDWARD NATHANIEL CARLTON,

        Plaintiff,                Case No. 1:21-cv-981

v.                                       Honorable Phillip J. Green

TOM LEBO, et al.,

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff paid the requisite $402.00 filing fee on December 6, 2021. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

        Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rules 18, 20, and 21 regarding joinder, the Court will dismiss without prejudice Defendant Loomis because he is misjoined.

        With regard to the properly joined claims, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Food Service Director Tom Lebo, Business Officer Unknown Dine, Classification Director Unknown Burns, Warden Randy Rewerts, and Librarian R. Loomis.

Plaintiff alleges that on June 18, 2021, he spoke to Defendant Lebo and presented him with a list of prisoners from Unit 900 who had requested to work in Food Service because of the scabies outbreak in Unit 800. (ECF No. 1, PageID.5; ECF No. 1-2.) Defendant Lebo refused to send those prisoners to work in Food Service, claiming that they were not medically or security cleared. (ECF No. 1, PageID.5.) Plaintiff asserts, however, that several prisoners from Unit 700 were forced to work in Food Service from 4:30 a.m. until 7:30 p.m., seven days a week. (*Id.*) Plaintiff avers that he also provided the list of prisoners to Defendant Burns, and that Defendant Burns practiced discrimination by sending prisoners from Unit 700 to

2

work in Food Service instead of those from Unit 900 on Plaintiff's list. (*Id.*) Plaintiff also claims that Defendant Dine "went along with the discrimination" by informing Plaintiff that the inmates in Unit 700 had volunteered to work. (*Id.*) Plaintiff grieved the issue, and Defendant Rewerts denied his Step II appeal. (*Id.*)

Finally, Plaintiff alleges that on January 5, 2021, Defendant Loomis "stole 21 pages" of his exhibits. (*Id.*) He filed a criminal complaint with the Carson City Police Department. (*Id.*) On August 11, 2021, Defendant Loomis refused to provide Plaintiff with copies of the exhibits and retaliated against Plaintiff by issuing him a major misconduct for insolence when Plaintiff requested copies of the exhibits to send to Attorney General Dana Nessel. (*Id.*) Plaintiff avers that, to date, Defendant Loomis has not provided the copies, denying him access to the court. (*Id.*)

Plaintiff seeks damages in the amount of $100,000.00 from each Defendant, as well as attorney's fees, taxation of costs, and punitive damages. (*Id.*, PageID.6.)

## II. Misjoinder

Plaintiff's allegations concern two discrete events, and his action joins five Defendants, each sued in their personal capacity. Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim

3

. . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether

4

more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)).

The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision is another attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C.
> § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp.

2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

To allow a prisoner to proceed against improperly joined defendants or with improperly joined claims in a single action would permit him to circumvent the PLRA's filing fee provisions, either by allowing him to pay just one filing fee when he should pay multiple fees or by allowing him to avoid incurring a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous.[1]  Courts are therefore obligated to reject misjoined complaints like Plaintiff's.  *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court, therefore, will look to the first named Defendant and the earliest clear factual allegations involving that Defendant to determine which portion of the action should be considered related.  Here, Plaintiff names Defendant Lebo as the first Defendant in the caption of the complaint (ECF No. 1, PageID.1), in the list of Defendants (*id.*, PageID.3), and in his factual allegations (*id.*, PageID.5).[2]  Plaintiff's earliest factual allegations involving Defendant Lebo assert that he discriminated

---

[1] Plaintiff has already accrued more than three "strikes."  *See, e.g.*, *Carlton v. Smith et al.*, No. 1:04-cv-708 (W.D. Mich. Dec. 15, 2004) (Op., ECF No. 5, PageID.60).  Undoubtedly that is the reason he paid the full filing fee in this action rather than seeking leave to proceed *in forma pauperis*.

[2] The analysis of joinder must start somewhere.  Joinder of parties would seem, necessarily, to start with the first-named party because joinder of parties is not an issue until an additional party is named.  By accepting the first-named party as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

against Plaintiff by refusing to allow him and other inmates from Unit 900 to work in Food Service during the scabies outbreak on Unit 800.

The alleged discrimination against Plaintiff and the other inmates in his unit in denying them the opportunity to work in Food Service during a scabies outbreak also lies at the core of Plaintiff's claims against Defendants Dine, Burns, and Rewerts. But Plaintiff's claim against Defendant Loomis is wholly unrelated to that discrimination. Plaintiff's claim against Loomis is based on stealing papers from Plaintiff during January of 2021, refusing to provide legal copies to Plaintiff during August of 2021, and writing a retaliatory misconduct against Plaintiff, also during August of 2021. Plaintiff does not suggest any relationship between the claims against Lebo, Dine, Burns, and Rewerts, on the one hand, and Loomis, on the other. Plaintiff has, therefore, improperly joined Defendant Loomis.

Because the Court has concluded that Plaintiff has improperly joined Defendant Loomis to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845

8

(3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or

9

has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

10

Plaintiff alleges that Defendant Loomis engaged in conduct no earlier than January 2021. Plaintiff has sufficient time in his limitations period to file a new complaint against Defendant Loomis. Plaintiff, therefore, will not suffer gratuitous harm if Defendant Loomis is dismissed. Accordingly, the Court will exercise its discretion under Rule 21 to dismiss without prejudice the claims against Defendant Loomis. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). If Plaintiff wishes to proceed with his claims against Defendant Loomis, he shall do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[3]

## III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[3] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

11

suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Respondent Superior

Plaintiff fails to make specific factual allegations against Defendant Rewerts, other than his claim that he failed to conduct a thorough investigation in response to his grievance. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Rather, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Rewerts engaged in any active unconstitutional behavior. Plaintiff, therefore, fails to state a claim against him.

**B.     Equal Protection**

Plaintiff alleges that Defendants Lebo, Dine, and Burns violated his equal protection rights by treating him differently than inmates from Unit 700. (ECF No. 1, PageID.5.) Specifically, Plaintiff avers that these Defendants discriminated against him by not permitting him to work in Food Service during the scabies outbreak, even though Plaintiff claims he was cleared by security and medical to do so.[4] (*Id.*)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a

---

[4] Plaintiff appears to suggest that Defendants' conduct also violated the equal protection rights of other prisoners from Unit 900. Plaintiff, however, lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As the Tenth Circuit Court of Appeals has stated:

> A litigant may bring his own claims to federal court without counsel, but not the claims of others. *See* 28 U.S.C. § 1654; see also 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1769.1 & n.12 (2d ed. 1986) (citing cases for rule that "class representatives cannot appear pro se"). This is so because the competence of a layman is "clearly too limited to allow him to risk the rights of others." *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975).

*Fymbo v. State Farm Fire and Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (citation forms revised) (cited with approval in *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001)). "[P]recedent supports limited inmate-to-inmate legal assistance . . . [but such] assistance does not extend to representation of other inmates in court . . . ." *Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 918 (6th Cir. 2009).

14

compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440–41. However, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's claim does not implicate a fundamental right. Plaintiff does not have a "constitutional right to a particular job or any job." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006). And Plaintiff does not allege that he is a member of a suspect class or that Defendants discriminated against him because he was a member of a suspect or quasi-suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003), for example, prisoners holding the same security classification, *id.*, or prisoners housed in Unit 900 at the Carson City Correctional Facility.

Moreover, Plaintiff does not allege that Defendants discriminated against him ***because*** he is a member of a group, specifically the group of prisoners housed in Unit 900 at the Carson City Correctional Facility.[5] Rather, Plaintiff claims that

---

[5] To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposely discriminated against him. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66.

Defendants gave the kitchen jobs to prisoners housed in Unit 700 explaining that they passed security and health screening. According to Plaintiff, however, that explanation is not rational because Plaintiff, too, passed security and health screening. Plaintiff's claim, therefore, is the prototypical "class of one" equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).[6] The Supreme Court has refused to recognize "class of one" claims in the public employment context. *See Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 606–07 (2008); *see also Davis v. Prison Health Servs.*, 679 F.3d 433, 442 (6th Cir. 2012) (acknowledging that *Engquist* prohibits "class of one" claims in the public employment context—even in that prison employment case—but concluding that Davis raised a traditional class-based discrimination claim, not a "class of one" claim);

---

[6] The Sixth Circuit has described "class of one" equal protection claims as being the third type in a universe of three types of equal protection claims:

> "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty. Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Davis does not argue an infringement of a fundamental right or that he is a member of a suspect class. Rather, Davis relies on the third argument—whether others "similarly situated" received different treatment "without any rational basis for the difference." *Id*. This is called a "class-of-one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).

*Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2020). "[T]he hallmark of [a class-of-one] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (internal quotes omitted). That is the nature of Plaintiff's claim here. Though he indicates that he is a member of a group—the prisoners housed in Unit 900—he does not allege or suggest that Defendants disfavored the group or that they treated him arbitrarily or maliciously because of his membership in that group.

*Carter v. Mich. Dep't of Corr.*, No. 1:13-cv-37, 2013 WL 3270909, at *13 (W.D. Mich. Jun. 27, 2013) ("Deciding whether a prisoner should be permitted to work in a particular prison job is precisely the sort of discretionary decision contemplated by the Court in *Engquist*."); *Johnson v. Grayson Cnty. Det. Ctr.*, No. 4:21-cv-P13-JHM, 2021 WL 3025452, at *3 (W.D. Ky. Jul. 16, 2021) (noting that "[s]everal courts have extended the reasoning in *Engquist* to the prison context" and citing cases); *Brown v. Partin*, No. 1:20-CV-235-TRM-CHS, 2020 WL 5077037, at *2 (E.D. Tenn. Aug. 27, 2020) ("[A] 'class of one' theory . . . is not available in the context of prison employment.") (citing *Engquist*).

Plaintiff, therefore, fails to state an equal protection claim against Defendants Lebo, Dine, and Burns.

## **Conclusion**

Having conducted the review required by Rule 21 of the Federal Rules of Civil Procedure, the Court determines that Defendant Loomis is misjoined in this action. The Court will dismiss without prejudice the claims against Defendant Loomis.

Having further conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal

would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court declines to certify that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  January 19, 2022 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge